MAHONING COUNTY BAR ASSOCIATION *v.* ZENA.

[Cite as *Mahoning Cty. Bar Assn. v. Zena,* 137 Ohio St.3d 456,

2013-Ohio-4585.]

*Attorney discipline—Neglecting entrusted legal matters—Failure to carry out employment contract—Intentionally causing damage or prejudice to client—Failure to render a full accounting of client funds or property upon request—One-year suspension, stayed on conditions.*

(No. 2012-0692—Submitted June 5, 2013—Decided October 23, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-059.

_____

**Per Curiam.**

{¶ 1} Respondent, Thomas E. Zena of Boardman, Ohio, Attorney Registration No. 0007375, was admitted to the practice of law in Ohio in 1972. In June 2011, relator, Mahoning County Bar Association, filed a multicount complaint against Zena, charging him with misconduct and violations of the Ohio Code of Professional Responsibility and the Rules of Professional Conduct.[1] The parties filed agreed stipulations of fact, rule violations, and aggravating and mitigating factors, and they also recommended a sanction.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing on December 20, 2011, at which it heard the testimony of Zena and his character witnesses—three judges and a court

_____

1. Relator charged respondent with misconduct under the applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation.

magistrate. The panel received 34 exhibits from relator, plus 12 exhibits and 49 character letters from Zena. The panel acknowledged that Zena's ethical-rule violations resulted from issues in his personal life that are now resolved.

{¶ 3} The parties stipulated that the appropriate sanction for the misconduct was a two-year suspension, all stayed on conditions. However, based upon overwhelming evidence in support of Zena's reputation for honesty and integrity during his 40-year legal career, the panel recommended that he be suspended from the practice of law for 12 months, all stayed on the conditions that he attend three hours of continuing legal education ("CLE") in law-office management and be monitored by a law-practice monitor, selected by relator, for a period of 12 months.

{¶ 4} The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 5} We remanded the matter on November 26, 2012, for a determination whether any of the clients harmed by Zena's conduct were entitled to restitution. The panel and board now recommend that Zena make restitution of $3,000 to Joseph and Laurie Taylor.

{¶ 6} We adopt the board's findings of fact, conclusions of law, and recommended sanction.

## Stipulated Facts

### *The McOwen Matter*

{¶ 7} In October 2003, Zena was contacted by Barbara McOwen, the mother of a former client, about some problems she was having with a general contractor and a subcontractor. Zena agreed to help her, and in January 2004, he sent McOwen a letter with information about his legal fees and a copy of the complaint that he had drafted against the contractor. The letter did not mention that Zena did not carry professional liability insurance.

**{¶ 8}** Zena filed the complaint in February 2004, but he failed to act reasonably and diligently in representing McOwen. He did not file an answer to the contractor's counterclaim, did not respond to requests for discovery, and failed to appear for a sanctions hearing. He also failed to respond to McOwen's numerous inquiries about the case.

**{¶ 9}** On June 23, 2005, the court entered a default judgment against McOwen on the contractor's counterclaim and sanctioned her for failing to respond to discovery. That same day, Zena voluntarily dismissed McOwen's complaint without her knowledge or consent.

**{¶ 10}** McOwen discharged Zena in July 2007, but in August 2008, Zena filed another complaint for McOwen against a subcontractor. Zena withdrew as counsel in that case, and with the assistance of new counsel, the parties eventually settled the case.

**{¶ 11}** After consulting with her new counsel, McOwen learned of the dismissal of her original complaint against the contractor and the default judgment entered against her on the contractor's counterclaim. In October 2009, she filed a motion asking the trial court to vacate the default judgment against her. The court granted McOwen's motion, vacated the default judgment, and returned the case to the active docket in January 2010. Several months later, the contractor voluntarily dismissed his counterclaim.

*The Taylor Matter*

**{¶ 12}** On December 14, 1998, Zena filed a civil complaint for damages against Terry Harmon Motors, Inc., and General Motors Corporation on behalf of Joseph and Laurie Taylor. Zena failed to respond to a motion for summary judgment filed by Harmon Motors, and he also ignored the Taylors' numerous requests for information about their case.

**{¶ 13}** The court granted summary judgment to Harmon Motors in October 2000, and on December 18, 2000, the court dismissed the Taylors' case

with prejudice but failed to serve the dismissal entry on counsel as required by Civ.R. 58(B). The Taylors did not learn of the dismissal for almost ten years. Zena admitted that his failure to diligently follow up on the Taylors' numerous inquiries about the case was initially negligent, but that it became misleading with the passage of time.

*The Crum Matter*

{¶ 14} In order to facilitate the settlement of a client's personal-injury case, Zena negotiated a reduction of chiropractor J. Murphy Crum's bill for services rendered to the injured party. Zena promised to pay Dr. Crum the negotiated amount—$1,200—from the settlement proceeds, but he mistakenly delivered the doctor's portion of the settlement to the client. Dr. Crum repeatedly asked Zena for payment from 2004 to 2010. He eventually filed a lawsuit against Zena and a grievance with relator. Zena never denied that he owed Dr. Crum the money, but due to financial hardship, he did not satisfy this obligation until November 2010.

**Stipulated Disciplinary Violations**

{¶ 15} The parties stipulated that Zena's conduct in these matters violated the following Disciplinary Rules: DR 1-104(A) (requiring a lawyer to disclose to the client that the lawyer lacks professional liability insurance), 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services), and 7-101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship), and Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.15(d) (requiring a lawyer, upon request, to promptly render a full accounting of funds or property in which a client or third party has an interest). The parties also stipulated that four other violations that were alleged in the complaint should be dismissed.

**{¶ 16}** The panel and board adopted the parties' stipulations of fact and misconduct and agreed that the remaining violations alleged in relator's complaint should be dismissed. We find that there is clear and convincing evidence in support of the stipulated rule violations.

**Sanction**

**{¶ 17}** In recommending a sanction, the panel and board considered the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. They also considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 18}** The parties stipulated that two aggravating factors are present: a pattern of misconduct and multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). As mitigating factors, they stipulated that Zena has no prior disciplinary record, has made full and free disclosure to the board and has cooperated in the proceedings, and has demonstrated his good character and reputation through character letters and testimony. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e).

**{¶ 19}** The parties further stipulated that the appropriate sanction for Zena's misconduct was a two-year suspension, entirely stayed on the conditions that he be monitored for three years by a law-practice monitor selected by relator, attend at least three hours of CLE in law-office management during each of those three years, represent clients in civil matters only with qualified co-counsel to assist him, and commit no further misconduct. In his closing argument, however, relator's counsel indicated that he would not object to a lesser sanction.

**{¶ 20}** The panel and board rejected the parties' stipulated sanction and recommend that we impose a one-year suspension, all stayed on the conditions that Zena attend no less than three hours of CLE in law-office management and be monitored by a law-practice monitor, selected by relator, for a period of 12

months. On remand from this court to address the propriety of restitution for the affected clients, the panel and board also recommended that Zena be ordered to make $3,000 restitution to Joseph and Laurie Taylor, that any money owed to Barbara McOwen be determined through her pending malpractice action against Zena, and that no restitution be made to Dr. Crum because Zena has already satisfied that obligation.

{¶ 21} We find that there is clear and convincing evidence in support of the aggravating and mitigating factors. We agree that Zena presented overwhelming evidence from four witnesses—an appellate court judge, two common pleas court judges, and a juvenile court magistrate—and character letters from 49 individuals (ten judges, two magistrates, 34 attorneys, two former clients, and a legal secretary) attesting to his reputation for honesty and integrity, his ability to practice law in general, and his talent as a criminal-defense attorney.

{¶ 22} Zena has had no prior disciplinary action against him during his 40-year career, and the evidence shows that much of Zena's misconduct occurred during a time of great turmoil in his personal life. He testified that the personal issues he faced have been resolved and should not recur. He also testified that moving forward, he intends to focus on his criminal-law practice and limit his civil practice to postdecree domestic-relations motions.

{¶ 23} The board did not cite any case law in support of its recommended sanction. For misconduct similar to Zena's, we have imposed a one-year suspension, stayed on conditions, including that the attorney serve one year of monitored probation and maintain compliance with his mental-health contract with the Ohio Lawyers Assistance Program. *See Columbus Bar Assn. v. Micciulla*, 106 Ohio St.3d 19, 2005-Ohio-3470, 830 N.E.2d 332, ¶ 26-27. Micciulla engaged in conduct comparable to Zena's in the handling of four separate client matters, but he also failed to maintain complete records of client funds in his possession and occasionally deposited unearned fees directly into his

general operating account. *Id.* at ¶ 17-18. Like Zena, Micciulla had no prior disciplinary record and no dishonest or selfish motive, and he cooperated during relator's investigation. *Id.* at ¶ 21. He also showed that he was very active in providing pro bono legal services, presented several letters from professional acquaintances highly commending his character, and established the existence of a mental disability that qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). *Id.* at ¶ 23-24.

{¶ 24} The purpose underlying a disciplinary sanction is not to punish the offender but to protect the public. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. Based on the foregoing, we agree with the board's findings that Zena is no longer a danger to clients and that no actual suspension from the practice of law is necessary to protect the public from harm.

{¶ 25} Accordingly, we suspend Zena from the practice of law for one year, all stayed on the conditions that he (1) attend at least three hours of CLE on law-office management within 90 days, (2) serve one year of probation in accordance with Gov.Bar R. V(9) with a monitor selected by relator, (3) make restitution to the Taylors in the amount of $3,000 within 90 days, and (4) commit no further misconduct. If Zena violates the conditions of the stay, the stay will be lifted, and he shall serve the one-year suspension. Costs are taxed to Zena.

_____

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

David Comstock Jr., Bar Counsel, and Ronald E. Slipski, for relator.

John J. Juhasz, for respondent.

_____